22-3006
*In re: Bernard L. Madoff Investment Securities LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of December, two thousand twenty-three.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> MICHAEL H. PARK,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

_____

IN RE: BERNARD L. MADOFF INVESTMENT SECURITIES LLC, DEBTOR

IRVING PICARD, TRUSTEE FOR THE LIQUIDATION OF BERNARD L. MADOFF INVESTMENT SECURITIES LLC, AND BERNARD L. MADOFF,

> *Plaintiff-Appellee*,

> *v.*                                                     22-3006

RAR ENTREPRENEURIAL FUND, LTD,

> *Defendant-Appellant*,

RUSSELL OASIS, TAMIAMI TOWER CORP.,

> *Defendants*,

SECURITIES INVESTOR PROTECTION CORP.,

> *Intervenor*.

| For Plaintiff-Appellee: | DEIRDRE J. FARRELL (David J. Sheehan, Seanna R. Brown, Amy E. Vanderwal, *on the brief*), Baker & Hostetler LLP, New York, NY. |
| --- | --- |
| For Defendant-Appellant: | MICHAEL J. CONIGLIARO, Carlton Fields, P.A., Tampa, FL. |
| For Intervenor: | NATHANAEL S. KELLEY, Senior Associate General Counsel (Kevin H. Bell, Senior Associate General Counsel, Nicholas G. Hallenbeck, Assistant General Counsel, Michael L. Post, General Counsel, *on the brief*), Securities Investor Protection Corporation, Washington, DC. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Furman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant RAR Entrepreneurial Fund, Ltd. ("RAR") appeals from a judgment entered September 23, 2022, by the United States District Court for the Southern District of New York (Furman, *J.*). This case arises from the Ponzi scheme of Bernard L. Madoff and the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS," or the "LLC") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq*. ("SIPA"). "Because the facts [of the scheme] are well documented across many pages of Federal Reporters," *In re Bernard L. Madoff Inv. Sec. LLC*, 976 F.3d 184, 188 (2d Cir. 2020), including several decisions of this Court, *see, e.g.*, *id.*; *Picard v. JABA Assocs. LP*, 49 F.4th 170 (2d Cir. 2022), we recount them only briefly here.

Madoff registered with the Securities and Exchange Commission ("SEC") as a broker-dealer in 1960 and ran his broker-dealer business as a sole proprietorship until 2001. Three

business units comprised the sole proprietorship: (1) an investment advisory ("IA") business, (2) a proprietary trading business, and (3) a market-making business. In 2001, Madoff formed the LLC—in which he served as the sole member—and registered it with the SEC as the "successor" to the sole proprietorship. Upon Madoff's arrest and the collapse of his Ponzi scheme in 2008, Irving H. Picard (the "Trustee") was appointed as trustee for the liquidation of the LLC.

From at least April 3, 1998 to December 11, 2008, RAR was a customer of Madoff's IA business. In November 2010, the Trustee brought the underlying adversary proceeding against RAR seeking to avoid and recover $12,800,065 that RAR received from two JPMorgan Chase accounts used by the IA business (the "509 and 703 Accounts"). The case ultimately went to trial in the spring of 2022 on the issue whether the transfers to RAR were "a transfer of an interest of the debtor," *see* 11 U.S.C. § 548(a)(1)—that is, whether they were transfers from the LLC. While the Trustee maintained that Madoff transferred all three business units to the LLC such that all payments to IA customers were transfers of the debtor's property, RAR argued that Madoff never transferred the IA business or the 509 and 703 Accounts, so the transfers it received were not from the debtor. The jury returned a verdict in the Trustee's favor, and the district court entered judgment consisting of the principal amount of $12,800,065 and prejudgment interest of $6,067,230.81. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\* \* \*

On appeal, RAR raises four main arguments to challenge the judgment: improperly admitted expert testimony, wrongful denial of a motion for a judgment as a matter of law ("JMOL"), error in the special verdict form, and improper award of prejudgment interest.

## A. Expert Testimony

This Court reviews a district court's decision to admit expert testimony for abuse of discretion. *United States v. Williams*, 506 F.3d 151, 159–60 (2d Cir. 2007). "The decision to admit expert testimony is left to the broad discretion of the trial judge and will be overturned only when manifestly erroneous." *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir. 1995).

RAR argues that the district court incorrectly permitted the Trustee's expert, Bruce Dubinsky, to testify at trial. It contends that Dubinsky's expert report improperly does not contain the key opinion proffered in his testimony—that Madoff transferred the IA business to the LLC on or as of January 1, 2001—nor does it express an opinion on the ownership of the JPMorgan bank accounts. RAR seeks a new trial because it claims the district court should have precluded the testimony as not timely disclosed and that RAR should have been permitted to challenge both Dubinsky's qualifications to speak on this topic and the relevance of his opinions. We disagree.

Here, the district court maintained an internal rule, Rule 3(I) of the Court's Individual Rules and Practices in Civil Cases, that "[u]nless the Court order[s] otherwise, motions to exclude testimony of experts . . . must be made by the deadline for dispositive motions and should not be treated as motions *in limine*." Spec. App'x at 1. RAR did not seek to preclude Dubinsky's testimony until after the parties' summary judgment motions had been filed. At the start, Federal Rule of Civil Procedure 16(b) requires "good cause" to excuse compliance with a scheduling order. Fed. R. Civ. P. 16(b); *see Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007). "[A] finding of 'good cause' depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). In response to a joint letter by the parties addressing whether either or both should be permitted to make an untimely motion to exclude expert testimony, the district court rejected RAR's arguments, writing: "Defendant had ample

opportunity to file a motion with respect to Mr. Dubinsky . . . and failed to do so by the Court's deadline.   Defendant . . . failed to show good cause [for leave to file after the deadline.]"   Spec. App'x at 4.   Nevertheless, RAR soon after tried to exclude Dubinsky's testimony a second time through a motion *in limine* premised on Federal Rules of Civil Procedure 26 and 37, and a final time at a pretrial conference.[1]

We are unmoved by RAR's argument that the untimeliness of its motion should have been excused because "Dubinsky's opinions on the issue to be tried were not [timely] disclosed." App't Br. at 37.   The Trustee had disclosed Dubinsky as an expert in advance.   Dubinsky's report contained opinions consistent with his testimony and the Trustee's characterization of events: that the assets of the sole proprietorship—including the IA business—were transferred to the LLC, that the IA business operated through the 509 and 703 Accounts, and that the JPMorgan accounts contained customer money and were used for customer withdrawals.   And even though Dubinsky's report did not reference every detail of his trial testimony, the district court did not abuse its discretion in concluding that RAR had sufficient notice and opportunity to challenge Dubinsky's opinions.   Thus, although the case originated with a judge who maintained a different internal rule on motion deadlines, RAR had sufficient time after the case's re-assignment to familiarize itself with and avail itself of the court's rules.

Likewise, RAR's argument that it was erroneously precluded from untimely challenging Dubinsky's qualifications under Federal Rules of Evidence Rule 702 is unavailing.[2]   Dubinsky,

---

[1]  Rule 26(a)(2) provides that the disclosure of a potential witness must be accompanied by a written report by the witness containing, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them."   Fed. R. Civ. P. 26(a)(2)(i).   Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."   Fed. R. Civ. P. 37(c)(1).

[2]  Rule 702 provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or

a forensic accountant, has repeatedly qualified as an expert in related cases in our Circuit, but we need not reach RAR's argument about his qualifications as an expert here. RAR did not show good cause for filing an untimely motion and the district court did not abuse its discretion in denying RAR's efforts to preclude or challenge Dubinsky's opinions.

## B. JMOL

Pursuant to Federal Rule of Civil Procedure 50(b), we review *de novo* a district court's denial of a motion for JMOL following a jury verdict. A court may grant JMOL at this stage "only if the court, viewing the evidence in the light most favorable to the non-movant, concludes that a reasonable juror would have been *compelled* to accept the view of the moving party." *MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172, 180 (2d Cir. 2016) (quoting *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011)) (emphasis in *Cash*). JMOL is not proper unless

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it].

*Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 161 (2d Cir. 1998) (quoting *Cruz v. Loc. Union No. 3, Int'l Bhd. Of Elec. Workers*, 34 F.3d 1148, 1154 (2d Cir. 1994)).

Following the jury's verdict in the present case, the district court denied RAR's motion for JMOL under Rule 50(b). RAR challenges this ruling, arguing that viewing the evidence in the light most favorable to the Trustee, there is not a legally sufficient evidentiary basis to conclude

---

education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

6

that the money RAR received from the 509 and 703 Accounts was property of the LLC. We disagree.

Here, the jury's verdict is amply supported by the evidence and testimony introduced at trial. For instance, Dubinsky explained that the Amended Form BD, the Uniform Application for Broker-Dealer Registration, *see* 15 U.S.C. § 78o(a)–(b); 17 C.F.R. § 249.501(a), contains the attestation that "'[e]ffective January 1, 2001, predecessor,' that was Bernard L. Madoff, a sole proprietorship, 'will transfer to successor' – that's now the LLC – 'all of predecessor's assets and liabilities, related to predecessor's business. The transfer will not result in any change in ownership or control.'" App'x at 1551–52. Following this form's filing with the SEC, BLMIS succeeded to the SEC Registrant Number formerly used by the sole proprietorship. The Amended and Restated Operating Agreements indicate that BLMIS received all assets, including bank accounts of the sole proprietorship, effective January 1, 2001. Other evidence includes a letter to a third party advising that Madoff "transferred all of the assets . . . associated with . . . the sole proprietorship to [BLMIS]," App'x at 2167, as well as numerous additional transmittals confirming the same to regulators and third parties.

There is thus no basis here to conclude that the jury's determination was based on mere conjecture, unsupported by evidence. Indeed, the district court concluded that RAR's JMOL motion was "meritless, if not frivolous," Spec. App'x at 15, owing to the "overwhelming" weight of evidence that ownership of the JPMorgan accounts transferred to the LLC, Spec. App'x at 15–16. We agree. It is unequivocally not the case that there is a "complete absence of evidence" or that RAR has presented "such an overwhelming amount of evidence" that a "fair minded person[]" could not make a finding against it. *Kirsch*, 148 F.3d at 161 (quoting *Cruz*, 34 F.3d at

7

1154 (brackets omitted)). The district court thus properly denied the motion for JMOL pursuant to Rule 50(b).

## C. Special Verdict Form Questions

"The formulation of special verdict questions rests in the discretion of the trial judge, and therefore our review is confined to inquiring whether the trial court's submission of the issues in the form of these questions constituted an abuse of discretion." *Emamian v. Rockefeller Univ.*, 971 F.3d 380, 390 (2d Cir. 2020) (quoting *Cann v. Ford Motor Co.*, 658 F.2d 54, 58 (2d Cir. 1981)). This Court "will reverse a judgment entered upon answers to questions which mislead and confuse the jury or which inaccurately frame the issues to be resolved by the jury." *Cann*, 658 F.2d at 58.

Here, the special verdict questions for the jury asked, first, whether the sole proprietorship's IA business was transferred to the LLC, and second, whether the LLC owned the JPMorgan 509 and 703 Accounts at the time of the transfers to RAR. The verdict form instructed: "*If you answer YES to Question 1, then you should skip Question 2 and proceed directly to sign the Verdict Form.*" App'x at 1831. RAR argues that the district court erred by directing the jury not to answer the second question if it answered the first in the affirmative. According to RAR, it was insufficient for a jury to conclude that the IA business was transferred to the LLC in response to the first question without also determining that the 509 and 703 Accounts were owned by the LLC. RAR preserved this objection by raising it below. *See Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 107 (2d Cir. 2001).

The district court did not abuse its discretion in crafting the special verdict questions. First, the district court did not err in concluding that resolving the first question concludes the case. Defendant had stipulated to the existence of only three Madoff sole proprietorship business units,

8

and that all but one—the IA unit—had been transferred to the LLC. Therefore, once the jury concluded that the IA business was also transferred to the LLC, it follows that the sole proprietorship ceased to exist and the JPMorgan Accounts ceased to exist outside LLC ownership. For this reason and others, in a related case, this Court has already rejected the argument that "the sole proprietorship nevertheless continued to operate a separate and independent investment advisory business" after its transfer to the LLC in light of "overwhelming evidence that BLMIS took over all aspects of the sole proprietorship." *JABA*, 49 F.4th at 183. Based on the record before us, the district court reasonably reached the same conclusion and appropriately crafted the special verdict questions to reflect this assessment.

Second, RAR's proposed verdict form contained a similar question to the first one formulated by the district court judge. RAR proposed: "Do you find that the investment advisory business was never transferred to the LLC and, instead, remained owned by Bernard Madoff or his Sole Proprietorship? If your answer is that the investment advisory business was never transferred to the LLC, you do not need to respond to any further questions." App'x at 1149. The ultimate verdict form's question was "slightly reformulated," but substantially similar. App'x at 1747. RAR objects that its proposed language was clearer, but we do not agree, nor do we think the chosen language "misl[ed] and confuse[d] the jury" or "inaccurately frame[d] the issues." *Cann*, 658 F.2d at 58. The district court did not abuse its discretion in reaching its assessment that it was "inappropriate and potentially confusing" to frame the question for the jury in the negative. App'x at 1747. Given this analysis, the court's choice falls within its "discretion in the style and wording of jury instructions." *Care Travel Co., Ltd. v. Pan Am. World Airways, Inc.*, 944 F.2d 983, 996 (2d Cir. 1991).

9

### D. Prejudgment Interest

Finally, the decision whether to grant prejudgment interest is "confided to the district court's broad discretion, and will not be overturned on appeal absent an abuse of that discretion." *SEC v. Contorinis*, 743 F.3d 296, 307 (2d Cir. 2014) (quoting *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1071–72 (2d Cir. 1995)). Here, the district court granted the Trustee's request for prejudgment interest at a rate of four percent spanning from the date of the complaint, November 12, 2010, through the date of the district court's judgment. The district court entered this judgment on the same day that this Court affirmed an identical award of prejudgment interest (with the same terms) in *JABA*. In *JABA*, we considered and rejected similar arguments to those here: that prejudgment interest is inappropriate where defendants did not commit wrongdoing, that the Trustee was responsible for the delay, and that the four percent award was excessive. 49 F.4th at 185–86. The district court wrote that it reached its decision "[i]n light of [*JABA*]," the district court's reasoning in its opinion in that case, and the Trustee's supplemental submissions. Spec. App'x at 12. RAR argues that the district court abused its discretion in awarding over $6 million in prejudgment interest "based on the Court's affirmance of the prejudgment interest award in *JABA Associates*, without addressing the circumstances of this case." App't Br. at 55. We disagree.

In fashioning an award of prejudgment interest, the district court considers factors including: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Contracting Co., Inc. v. Loc. Union No. 3, Int'l Bhd. Of Elec. Workers*, 955 F.2d 831, 833–34 (2d Cir. 1992). Based on these factors, we cannot conclude that the district court abused

its discretion in its award of prejudgment interest.   Although RAR unwittingly became embroiled in the Madoff Ponzi scheme, "wrongdoing by a defendant is not a prerequisite to an award." *Lodges 743 & 1746, Int'l Ass'n of Machinists v. United Aircraft Corp.*, 534 F.2d 422, 447 (2d Cir. 1975).   And as we noted in *JABA*, defendants "certainly have a right to litigate their case, but that does not change the fact that they have benefited from other customers' stolen property and have not returned it for over a decade."   49 F.4th at 186.   Some of these delays in the thirteen years since the filing of the complaint appear to stem from RAR's own re-litigation of issues dispensed with in their proceedings and in related proceedings in this Circuit.   As the district court stated in its order denying RAR's motion seeking JMOL or a new trial, "[c]ontinuing to press an argument that has been rejected so many times and so definitively is certainly a waste of resources."   App'x at 2061.

Moreover, we have already concluded in *JABA* that under similar circumstances a four percent award is not "unnecessarily harsh or punitive."   49 F.4th at 186.   While RAR has held the unearned funds it received, the Trustee and the other customers have been deprived of their use.   The prejudgment interest appropriately reflects some of the potential profits other customers lost while RAR held the funds.

* * *

We have considered RAR's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

11